## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 12-00649-TLM** |
| **JAY P. CLARK,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **TOM DeVRIES and the DeVRIES** | ) | |
| **FAMILY FARM, LLC,** | ) | **Adv. No. 13-06034-TLM** |
| | ) | |
| Plaintiffs/Counter-<br>Defendants, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JAY P. CLARK, dba CRYSTAL<br>SPRINGS RANCH,** | ) | |
| | ) | |
| Defendant/Counter-<br>Claimant. | ) | |
| _____ | ) | |

### MEMORANDUM OF DECISION
_____

**PROCEDURAL BACKGROUND**

Jay P. Clark ("Debtor") initially filed a petition on March 27, 2012,

commencing a chapter 12 case.[1]  Following highly-contested evidentiary hearings,

---

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title
11, U.S. Code §§ 101-1532.  Citations to "Bankruptcy Rule" are to the Federal Rules of
Bankruptcy Procedure and those to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

the Court on May 31, 2013, converted the case to a chapter 7 liquidation under

§ 1208(d), concluding Debtor committed fraud in connection with the case.[2]  A

chapter 7 trustee, Jeremy Gugino ("Trustee") was appointed and is administering

the bankruptcy estate.

Debtor's chapter 12 attorneys were replaced by a different lawyer after

conversion, and that lawyer was subsequently allowed to withdraw.  Debtor is

presently representing himself *pro se* in the case and in the instant adversary

proceeding.  Debtor was trained, licensed and practiced as a lawyer until his

suspension.[3]  For that reason, precedent that generally requires the Court to

liberally construe the submissions of *pro se* litigants has little meaning here and

Debtor appropriately bears the onus of pleading errors and similar failures.[4]

On September 5, 2013, Tom DeVries and the DeVries Family Farm, LLC

(collectively "Plaintiffs"), initiated this adversary proceeding.  Plaintiffs seek a

judgment holding nondischargeable under § 523(a)(2)(A) all indebtedness arising

---

[2]  That Order and the oral decision underlying it were issued by the Hon. Jim D. Pappas, who had presided over the case from its inception.  Subsequently, Bankruptcy Judge Pappas entered an order of recusal in June, 2013, and the undersigned was assigned the case and all related matters, which now include the instant adversary proceeding.  As discussed later in this Decision, Debtor appealed the order of conversion.

[3]  *See Idaho State Bar v. Clark*, 283 P.3d 96 (Idaho 2012) (Supreme Court upholding Bar's discipline on an appeal by Debtor, and suspending him from practice for 3 years).

[4]  While the Court makes "reasonable allowances" for *pro se* litigants, *see*, *e.g.*, *Hyatt v. Hyatt (In re Hyatt)*, 2011 WL 6179267, *4 (Bankr. D. Idaho Dec. 13, 2011), even those litigants are bound by and must follow the Code, Rules and Local Bankruptcy Rules.  *See*, *e.g.*, *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 781 n.2 (9th Cir. BAP 2000).

MEMORANDUM OF DECISION - 2

from a post-petition "hay contract" entered into on April 4, 2012, between Debtor

and Plaintiffs.  Debtor failed to disclose to Plaintiffs at the time of such contract

that he was in bankruptcy.  Debtor also failed to disclose to Plaintiffs that Debtor

was in litigation with another party, Murphy Land Company, LLC ("MLC"), and

had by Idaho state court order been dispossessed from the farm ground on which

the putative contract was to be performed.  These nondisclosures and related

conduct formed the material basis for this Court's § 1208(d) ruling.

On October 8, Debtor filed an answer.  Adv. Doc. No. 7.[5]  In addition to

asserting denials and affirmative defenses, Debtor alleged "counterclaims" against

Plaintiffs.[6]  Debtor contends Plaintiffs, as "counter-defendants," are liable to him

for "fraud."  Debtor denominates this as "fraud on the court" (in so-called Count

One) and as "fraud in fact" (Count Two).  *See id.* at 7-10 ("Counterclaims").

Under such Counterclaims, Debtor seeks the following relief: (a) dismissal of

Plaintiffs' complaint; (b) a "new hearing" on the conversion of the case to chapter

7; and (c) a money judgment for damages incurred "as a proximate cause of

unlawful actions" taken by Plaintiffs.  Adv. Doc. No. 7 at 10.

On October 29, Plaintiffs filed a motion to dismiss Debtor's Counterclaims

---

[5]  Filings in the instant adversary proceeding will be noted herein as "Adv. Doc. No. __."
The Court takes judicial notice of the filings in the underlying bankruptcy case, *see* Fed. R. Evid.
201, and the same will be noted as "Doc. No. __."

[6]  *See* Bankruptcy Rule 7013, incorporating, with a qualification not relevant here, Civil
Rule 13 (governing counterclaims).

MEMORANDUM OF DECISION - 3

under Civil Rule 12(b)(6), which is applicable to adversary proceedings under

Bankruptcy Rule 7012(b).  Adv. Doc. No. 10 ("Dismissal Motion").  The

Dismissal Motion was noticed up for hearing on November 18.[7]

Complicating things procedurally, Debtor also asserted the same Count One

and Count Two "counterclaims" against MLC, and against MLC's law firm,

Hawley Troxell Ennis & Hawley, LLP ("HTEH"), and HTEH attorney Steve

Schossberger, all of whom Debtor calls "counter-defendants."  Adv. Doc. No. 7 at

5-10.  However, MLC, HTEH and Schossberger were not plaintiffs nor otherwise

party to or participating in the adversary proceeding when Debtor filed his answer

and Counterclaims.  This suggests the Counterclaims against them are improper

and should be summarily stricken.[8]

In any event, on November 15, MLC, HTEH and Schossberger filed a

"Third-Party Defendants' [sic] Joinder in [Plaintiffs'] Motion to Dismiss."  Doc.

No. 18 ("Joinder").  By virtue of the Joinder, these parties effectively urge, under

---

[7] Debtor responded to the Dismissal Motion, *see* Adv. Doc. No. 13, to which Plaintiffs
replied, Adv. Doc. No. 16.  The Court has considered all submissions.

[8] At hearing, the Court hypothesized that those claims might be viewed as claims
asserted against third-party defendants in this case, with Debtor being the third-party plaintiff.
*See* Civil Rule 14, incorporated by Bankruptcy Rule 7014.  But not only did Debtor not pursue
this course, there turns out to be a problem with construing these assertions against MLC, *et al.*,
as "Third-party Practice."  Under Civil Rule 14(a)(1), "[a] defending party may, as a third-party
plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or
part of the [Plaintiffs'] claim against it*."  Nothing suggests that this scenario applies, *i.e.*, that
MLC, *et al.*, may be liable to Debtor for some or all of Plaintiffs' claims asserted against Debtor.
situation created by Debtor is simply trying to pound a square peg into a round hole.

MEMORANDUM OF DECISION - 4

Civil Rule 12, dismissal of the Counterclaims as against them.

Counsel for these parties and for Plaintiffs appeared on November 18 and argued in favor of the Dismissal Motion and the Joinder.  Debtor appeared and argued in opposition to such dismissal.  The Court took these matters and issues under advisement.[9]  This Decision resolves the same.[10]

**FACTS**

This Court's oral rulings converting the case to chapter 7 and denying Debtor's motion for stay pending his appeal of the conversion order are incorporated fully by reference.  Select aspects of those rulings are restated here to provide context for the decisions reached on the Dismissal Motion and the Joinder.[11]

Prior to 2010, Debtor had been a crop share tenant on farm ground owned by the Hilliards.  The arrangement between the Hilliards and Debtor was oral until

---

[9]  On December 9, MLC, HTEH and Schossberger filed a motion to dismiss, Adv. Doc. No. 21, and a brief in support, Adv. Doc. No. 21-1.  This Court takes a dim view of parties filing papers and briefs after a matter has been taken under advisement unless leave of the Court has been first obtained.  As noted, the Court construes the Joinder as a request for dismissal.  It will ignore the post-hearing motion and briefing, and rely on its own analysis of authorities.

[10]  This Decision constitutes the Court's findings and conclusions on the contested matters presently before the Court.  Bankruptcy Rules 7052, 9014.

[11]  The facts as relevant to the present matter were established by the record previously developed and the findings the Court entered in connection with prior rulings, especially conversion.  *See*, *e.g.*, *Gugino v. Wallace (In re Wallace)*, 2013 WL 4501415, *2 n.2 (Bankr. D. Idaho Aug. 22, 2013) (discussing "law of the case").  There was no evidence presented at the hearing on the Dismissal Motion.

MEMORANDUM OF DECISION - 5

Debtor presented, and the Hilliards executed, a lease agreement in early 2010. In December 2010, MLC acquired this farm land from the Hilliards. After acquiring the property, MLC demanded Debtor vacate it, but Debtor refused. MLC commenced a lawsuit in the Idaho State District Court for the Third Judicial District, Owyhee County. The Hilliards also sued Debtor.

On March 20, 2012, the state court orally ruled that, given the nature of Debtor's conduct in regard to the Hillards, the written lease was "null and void, and [of] no legal force or effect" and, among other things, held MLC was entitled to immediate possession of the farm ground. On March 26, it entered an order voiding the lease *ab initio* and awarding immediate possession to MLC. On March 27, 2012, it entered an order declaring the lease a nullity and of no force or effect, and requiring that it be expunged from the real property records. The clerk of the state court issued a writ of possession to MLC per the state court's order. The Court later held the order in abeyance pending a March 30 hearing scheduled in part to consider certification of the summary judgment as a final judgment under Idaho rules.

On March 27, 2012, Debtor filed a motion to reconsider. That evening, he filed his chapter 12 bankruptcy petition. Schedules and statements were not filed with the petition. They in fact were not filed until May 3, 2012.

Between the date of the petition and the filing of the schedules, Debtor

MEMORANDUM OF DECISION - 6

contracted with Plaintiffs for the sale of 1,500 tons of hay at a price of $180/ton

(*i.e.*, $270,000) for which Plaintiffs made a downpayment of $135,000.  Debtor did

not disclose to Plaintiffs that he had filed bankruptcy, *or* that he was in litigation

with MLC over the extent of his rights in the farm ground where the hay to be

harvested to satisfy Plaintiffs' contract was located, *or* that his purported lease on

such property was voided and declared a nullity by the state court the last week of

March, 2012, *or* that he was dispossessed of and facing eviction from the farm

ground.  All this information was disclosed to Plaintiffs starting April 20, 2012 –

*after* the contract had been entered into and the downpayment made to Debtor.

On May 3, 2012, Debtor filed his schedules and statements, Doc. No. 42,

acknowledging the debt to Plaintiffs.  He therein disclosed, among other things,

that Plaintiffs were creditors with a liquidated, noncontingent and undisputed

claim for $135,000 based on the amounts paid on a 2012 contract for 1,500 tons of

hay.  *Id.* at 24 (sch. F), 28 (sch. G).[12]

Ultimately, Plaintiffs filed a motion to convert the chapter 12 case to a

chapter 7 case under § 1208(d) on the basis of Debtor's fraud.  Doc. Nos. 189,

---

[12]  On November 21, 2012, Plaintiffs were allowed a $135,000 administrative expense
under § 503(b)(1)(A).  Doc. No. 153.  Another creditor, Van Boven Calf Ranch, Inc., had a
similar type of claim arising from a post-petition contract to purchase 750 tons of hay at $160/ton
(*i.e.*, $120,000) on which Van Boven paid Debtor $60,000.  That creditor also received an
administrative expense.  *See* Doc. No. 420.

MEMORANDUM OF DECISION - 7

190.[13]  Debtor filed a competing motion seeking to dismiss his case.  Doc. No. 193.

Both came on for hearing over several days.

Hearing was commenced on March 19, 2013, and continued for further

hearing on May 1.  *See* Doc. No. 194 (minute entry).  On April 30, Debtor

requested a continuance of the May 1 hearing due to illness, and his counsel

submitted a doctor's "disability certificate" asserting Debtor was incapacitated by

the flu from April 30 to May 3.  Doc. Nos. 234, 234-1.  That motion to continue

was granted over Plaintiffs' and MLC's objections.  *See* Doc. Nos. 241 (May 1

minute entry); 348 (transcript).  Hearing then occurred on May 24 and on May 31.

Doc. Nos. 257, 260 (minute entries); 328 and 329 (transcripts).

During the late May hearings, two things occurred that lie at the heart of

Debtor's "fraud on the court" Counterclaim.  Adv. Doc. No. 7 at 7-9.[14]

First, Schossberger questioned Debtor at hearing about comments made in a

deposition of Debtor's father, John W. Clark ("Clark"), in which Clark said Debtor

had "swindled" him.  Debtor protests that Clark's statement was a "joke" and

Schossberger knew it to be such, and his questioning was tantamount to "fraud on

the court" and a "contributing factor" to the Court's finding Debtor committed

---

[13]  MLC joined in that motion.  Doc. No. 208.

[14]  Though Debtor's contentions focus on Schossberger, he claims Plaintiffs acted in
concert and, thus, all parties participated in the "fraud on the court."  *Id.* at 8 ¶ 15.

MEMORANDUM OF DECISION - 8

fraud under § 1208(d).[15]

Debtor also claims Schossberger created or caused to be created a fictitious Facebook profile that Debtor accepted as a "friend" thus allowing Schossberger to access Debtor's Facebook postings including photos of Debtor's family.  Those photos, Ex. 436, were used to impeach Debtor's alleged unavailability on May 1 due to a flu-related "disability," the contention his counsel had successfully urged in order to obtain the continuance of the May 1 hearing date.  MLC contended that the photos established that on May 1 Debtor was instead with his wife and children on a family outing in Fairfield, Idaho.[16]

On May 31, 2013, after all evidence was in and arguments made, the Court entered orally its findings of fact and conclusions of law.  In this ruling, the Court

---

[15]  *See* Doc. No. 328 at 145-150 (transcript of May 24, 2013, hearing).  However, at the hearing, Debtor immediately and expressly made the point that the term "swindled" was used as a joke and not meant seriously.  *Id.* at 149.  In closing argument, MLC focused not on that one term but, instead, on whether the equipment transferred was a lease or a sale.  Doc. No. 329 at 129-30 (transcript of May 31).  The Court did not mention it in ruling.  *Id.* At 176-188.  In short, Debtor here makes much ado about nothing.

[16]  *See* Doc. No. 328 at 60-65.  Based on this testimony and Exhibit 436, MLC orally moved the Court for an order of contempt against Debtor "and/or" his counsel for bringing the April 30 motion to continue, which oral motion the Court declined to entertain.  Doc. No. 328 at 65.  In answering questions on May 24, Debtor appeared to concede he was in Fairfield on May 1.  *Id.* at 64-65.  A week later at the continued May 31 hearing, Debtor testified in response to his own counsel's questions that his trip to Fairfield occurred on April 27, not May 1, and that it was only the posting of the photos on Facebook that occurred on May 1.  Doc. No. 329 at 22-25.
   Neither this issue nor the one over the use of the comment in Clark's deposition rise anywhere close to the level needed for a finding of "fraud on the court."  *See*, *e.g.*, *Thomason v. Thomason (In re Thomason)*, 2009 WL 7809928, *4-5 (9th Cir. BAP June 26, 2009) (noting requirements for such a finding, and requiring proof of the same by clear and convincing evidence).  The Court also concludes that the showing alleged for "fraud in fact" is likewise facially inadequate.

MEMORANDUM OF DECISION - 9

found that Debtor (particularly as a lawyer and notwithstanding his Idaho State Bar

suspension) understood the nature and the consequences of the rulings of the state

district court in March, 2012.  Consequently, and even though Debtor felt there

was error in that state court's ruling, he knew and understood what the effect of

that ruling was, and – importantly – the materiality of that ruling to parties in

Plaintiffs' position who contracted with him.  Doc. No. 329 at 176-188.

The Court granted the motion to convert the case, and denied Debtor's

requested dismissal.  Orders on those findings and conclusions were entered later

that day.  Doc. Nos. 261, 262.

Debtor filed an appeal from the conversion order.  *See* Doc. No. 275.  That

appeal is currently pending before the District Court for the District of Idaho.  *See*

Case No. 1:13-cv-305-EJL.  Stay of the bankruptcy case pending appeal under

Bankruptcy Rule 8005 has been denied.  Doc. No. 318.

## DISCUSSION AND DISPOSITION

### A.    Plaintiffs' Dismissal Motion, and the Joinder therein

Plaintiffs' Dismissal Motion seeks relief under Civil Rule 12(b)(6).  Under

Civil Rule 12(b)(6), the well-pleaded allegations of the Counterclaims are accepted

as true and construed in a light most favorable to Debtor, and dismissal is improper

unless it appears beyond doubt Debtor can prove no set of facts in support of his

claim that would entitle him to relief.  *Blyler v. Hemmeter (In re Hemmeter)*, 242

MEMORANDUM OF DECISION - 10

F.3d 1186, 1189 (9th Cir. 2001); *Giovanazzi v. Schutte (In re Lebbos)*, 2012 WL

6737841, *14 (9th Cir. BAP Dec. 31, 2012); *Quad-Cities Constr., Inc. v. Advanta*

*Business Servs. Corp. (In re Quad-Cities Constr., Inc.)*, 254 B.R. 459, 465 (Bankr.

D. Idaho 2000).  The Court must focus not only on the challenged Counterclaims

but also on the relief sought by Debtor under those Counterclaims.

### 1.    Debtor seeks "dismissal" of the Complaint

Debtor requests, for the reasons alleged in the Counterclaims, that the Court

dismiss Plaintiffs' § 523(a)(2) complaint.  Adv. Doc. No. 7 at 10.  As with

Plaintiffs' Dismissal Motion, Debtor's Counterclaim request to dismiss the

adversary complaint also arises under Bankruptcy Rule 7012 and the portions of

Civil Rule 12(b) incorporated thereby.  However, Debtor has alleged no specific

grounds for dismissal of Plaintiffs' complaint under those Rules, nor has he

otherwise shown any reason Plaintiffs' pursuit of a § 523(a)(2) cause should be

dismissed.[17]

Consequently, the Dismissal Motion is well taken and this asserted relief

will be denied.

### 2.    Debtor seeks a "new hearing" on conversion

Debtor also, for the reasons stated and on the allegations he makes in the

---

[17]  As noted immediately above, dismissal is improper unless it appears beyond doubt
that Plaintiffs can prove no set of facts in support of their § 523(a)(2) claim that would entitle
them to relief.  Debtor has failed to meet this standard.

MEMORANDUM OF DECISION - 11

Counterclaims, wants the Court to grant a new hearing on conversion of the case to

a chapter 7 liquidation.  Adv. Doc. No. 7 at 10.[18]  But Debtor, as previously noted,

appealed this Court's ruling on conversion,[19] and that appeal is pending before the

District Court.

 *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir. 2000), establishes

that an appeal "confer[s] jurisdiction on the [appellate court] and divest[s] the

bankruptcy court of control over those aspects of the case involved in the appeal."

*Id.* at 1190 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58

(1982)).  The Court may not finally adjudicate substantial rights directly involved

in the appeal, but it may take actions that preserve the status quo, and it also retains

jurisdiction, absent a stay or supersedeas bond, to implement or enforce the

judgment or order being appealed, but may not alter or expand on it.  *Id.*; *see also*

*Sherman v. S.E.C. (In re Sherman)*, 491 F.3d 948, 967 (9th Cir. 2007) (citing

*Padilla*, and citing *In re Combined Metals Reduction Co.*, 557 F.2d 179, 201-03

(9th Cir. 1977) (holding that the lower court lacked jurisdiction to vacate an order

that had been appealed, but also recognizing that the bankruptcy court, absent a

---

[18]  That such a request is made in a "counterclaim" in a nondischargeability adversary proceeding rather than through a motion in the bankruptcy case is rudimentary procedural error. But it can be effectively addressed here as if it had been raised in the main case.

[19]  The Court entered orders, Doc. Nos. 261, 262, on May 31 that converted the case to chapter 7 and denied Debtor's motion to dismiss.  On June 10, Debtor filed his notice of appeal specifically noting that he was appealing Doc. No. 262 and, in fact, noting that a copy of the same was attached.  *See* Doc. Nos. 275, 275-1.

MEMORANDUM OF DECISION - 12

stay, could continue to exercise jurisdiction over other proceedings related to the

case)).

Even if one might argue that the asserted "fraud" is sufficient to allege a

Civil Rule 60(b)(3) argument for relief from the conversion ruling, this Court

clearly lacks the jurisdiction to grant reconsideration of, or a new hearing on, the

conversion to chapter 7 (or the refusal to dismiss the case on Debtor's motion) now

that its decision is on appeal.[20]

Therefore, this requested relief must also be denied.

### 3.    Debtor seeks a money judgment

Debtor contends that, because of the alleged fraud on the court and/or fraud

in fact, Plaintiffs are liable for a money judgment "for an amount of damages to be

proven at trial that are a proximate cause of [its] unlawful actions[.]" Adv. Doc.

No. 7 at 10.  The "actions" or conduct at issue occurred during the hearings on the

conversion motion, *id.* at 7-10, and, thus, during the chapter 12 case.[21]

---

[20]   Additionally, the time for Debtor to request the Court grant a new trial or hearing on
the conversion motion – the relief expressly requested by Debtor – was 14 days after entry of the
order.  *See* Bankruptcy Rule 9023 (addressing motions for new trial or to alter or amend a
judgment).  Debtor did not do so but instead appealed.  Such relief now requested of this Court
(though improperly in the adversary proceeding instead of the main bankruptcy case) is time-
barred, as well as outside this Court's jurisdiction under the authorities noted.  While the 14-day
time bar does not attend a Rule 60(b)(3) request, *see* Civil Rule 60(c)(1), incorporated by
Bankruptcy Rule 9024, the jurisdictional impediment remains.

[21]   In the allegations preceding the two "counts," Debtor also refers to other acts, such as
Plaintiffs April 4, 2012 contract and Plaintiffs' subsequent actions.  *Id.* at 6.  All this, too, was
post-bankruptcy.

MEMORANDUM OF DECISION - 13

Upon filing a case, all legal and equitable interests in property the debtor

holds or can claim become property of the estate under § 541(a)(1).  Certain

property that the estate acquires after bankruptcy is also property of the estate.

Section 541(a)(7).  Moreover, in chapter 12, property of the estate includes under

§ 1207(a)(1) "all property of the kind specified in [§ 541] that the debtor acquires

after the commencement of the case but before the case is closed, dismissed or

converted to a case under chapter 7 of this title, whichever occurs first[.]"

The alleged claims for "damages" or a "money judgment" are property of

the estate.  Property of the estate may be pursued solely by Trustee; Debtor lacks

standing to do so.  *Depue v. Cox (In re Cox)*, 462 B.R. 746, 764 (Bankr. D. Idaho

2011) (citing *Spiritos v. One San Bernardino Cnty. Superior Ct.*, 443 F.3d 1172,

1175 (9th Cir. 2006)).  In *Cox*, a debtor's asserted counterclaims were raised in the

creditor's § 523 action, and were dismissed based on the fact that they belonged to

the bankruptcy estate and the debtor lacked standing.  The same result is required

here, and this asserted relief will be denied.

**CONCLUSION**

In sum, there is no basis or support for any of the relief sought by Debtor

under the Counterclaims against Plaintiffs.  Therefore, Plaintiffs' Dismissal

Motion and the Joinder are well taken and will be granted for the reasons noted.[22]

---

[22]  Other arguments advanced by Plaintiffs and MLC, *et al.*, need not be considered.

MEMORANDUM OF DECISION - 14

The Counterclaims will be dismissed.  Counsel for Plaintiffs will provide a form of

order accordingly.

DATED:  December 17, 2013

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 15